IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARIE LEDESMA,

          Plaintiff,

  v.

MICHAEL J. ASTRUE, Commissioner, Social
Security Administration,

          Defendant.

_____/

No. C 10-5260 EDL

**ORDER ON CROSS-MOTIONS FOR
SUMMARY JUDGMENT**

**I.     Introduction**

      On November 19, 2010, Plaintiff Marie Ledesma filed this suit pursuant to 42 U.S.C.
§ 405(g), seeking judicial review of an Administrative Law Judge's ("ALJ") decision denying her
claim for disability insurance benefits and supplemental security income payments under Title II and
XVI of the Social Security Act.  On June 13, 2011, Plaintiff filed a motion for summary judgment,
asking this Court to reverse the final decision of the Social Security Administration ("SSA")
Commissioner with instructions to pay all disability benefits due to her, or alternatively, remand the
case for a new hearing.  Defendant filed a cross-motion for summary judgment on July 28, 2011,
asking this Court to affirm the Commissioner's final decision.  Plaintiff filed a reply memorandum
on July 28, 2011.  The matter is suitable for decision without oral argument and the matter is deemed
submitted.  For the following reasons, the Court DENIES Plaintiff's motion for summary judgment
and GRANTS Defendant's cross-motion for summary judgment.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

## II.    Background

Plaintiff was born on January 6, 1970.  Administrative Record (hereinafter "AR") 127.
Plaintiff did not complete high school. AR 48-49.  Plaintiff worked as a "house cleaner and food
service representative at a supermarket." AR 18.  Plaintiff was last employed in 2005 by a
temporary agency on a part-time basis. AR 50.  Plaintiff also worked part-time as a fast food worker
for over a year. Id.

### A.    Evidence of Impairment

#### 1.    Dr. Rosal

Plaintiff received most of her medical care from Carla Rosal, M.D., and was examined
several times at the Clinica de Salud del Valle de Salinas. See AR 255-361, 402-15.  As reflected
throughout the treatment notes, Plaintiff mainly complained of lower quadrant pain, leg pain, and leg
swelling. Id.  Plaintiff was diagnosed with diabetes, tinar pedis, and plantar fasciitis (inflammation
of the thick tissue on the bottom of the foot). Id.  Dr. Rosal prescribed multiple medications for
Plaintiff's health problems. AR 234.  In 2001, Dr. Rosal first prescribed Metformin and Actos to
treat Plaintiff's Diabetes Mellitus Type 2 (hereinafter "diabetes"). Id.  In 2005, Dr. Rosal first
prescribed Lisinopril to treat Plaintiff's high blood pressure. Id.  Further, in 2001, Dr. Rosal
prescribed Ibuprofen to treat Plaintiff's pain. Id.  Plaintiff also received Vicodin and Tramadol to
treat her pain. Id.  Dr. Rosal noted Plaintiff's medications might cause side effects including
dizziness. Id.  Dr. Rosal's treatment notes indicated that Plaintiff was prescribed Celexa to treat
depression. AR 258, 272.

In 2004, an x-ray report indicated that Plaintiff had a small calcaneal spur along the plantar
aspect. AR 289.  In May and June of 2005, Plaintiff complained of painful leg swelling and
depression to Dr. Rosal. AR 272-74.  In response to Plaintiff's complaints, Dr. Rosal's assessment
of Plaintiff included diabetes (AR 272-73), leg edema (272-74), and depression (AR 272-73).  In
September 2005, Plaintiff reported that she was dancing twice a week to relieve stress and that her
leg was not swollen or painful. AR 271.  On January 26, 2006, however, Plaintiff complained that
her plantar fasciitis was "restarting" and was "swelling." AR 270.  Plaintiff complained that she had

1   "lots of stress" and depression.  AR 267.  In February 2006, Dr. Rosal assessed that Plaintiff's

2   depression was situational.  AR 269.

3          On April 28, 2006, Plaintiff underwent surgery for the excision of the "heel spur, right foot,

4   and partial plantar fasciotomy."  AR 51, 420-422.  Alan H. Smith, D.P.M., was Plaintiff's podiatrist

5   and performed this surgery.  Id.  Plaintiff was taken to recovery in satisfactory condition and

6   tolerated the procedures well.  AR 421.  In September 2006, however, Plaintiff complained of stress

7   and asked Dr. Rosal to certify that Plaintiff was disabled because she "can't work due to [increased]

8   swelling [and] standing[.]"  AR 267.  Dr. Rosal noted that Dr. Smith certified that Plaintiff has a

9   disability.  Id.  According to Dr. Rosal's notes, Plaintiff also was not compliant with her medication

10  for diabetes and did not adhere to her diet for diabetes.  Id.  Dr. Rosal assessed that Plaintiff's

11  diabetes was not controlled.  Id.  In October 2006, Dr. Rosal noted that Plaintiff resumed her

12  diabetes medication and reported less stress and that her life was better, but that her right leg pain

13  still existed.  AR 265.

14         In December 2006, Dr. Rosal's treatment notes indicated that Plaintiff's diabetes medication,

15  Metaformin, caused Plaintiff to have nausea and upset stomachaches, and that Plaintiff again

16  stopped taking Metaformin regularly.  AR 264.  At that time, Dr. Rosal assessed that Plaintiff's

17  diabetes "ha[d] always been well controlled," id., which contradicted Dr. Rosal's note a few months

18  earlier that Plaintiff's diabetes was "not controlled," AR 267.  In January 2007, Dr. Rosal noted that

19  Plaintiff was tolerating Metaformin well with no problems.  AR 262.  Dr. Rosal, however, noted that

20  Plaintiff's weight was increased and that she was overeating due to cravings and an increased

21  appetite.  Id.  Dr. Rosal's treatment notes also indicated that Plaintiff was under great stress and that

22  Plaintiff was seeing a psychologist.  Id.

23         In another contradictory statement in February 2007, Dr. Rosal noted that Plaintiff's diabetes

24  was "not controlled yet."  AR 261.  Dr. Rosal noted that Plaintiff stopped her intake of Metaformin

25  for a CT scan.  Id.  On March 14, 2007, Dr. Rosal's notes in the treatment record indicated that

26  Plaintiff received a steroid injection for "chronic plantar fasciitis" and "still cannot work," and

27  indicated Plaintiff "wants to apply for SSI."  AR 260.  Dr. Rosal's treatment notes also indicated that

28  Plaintiff was "getting counseling" and may be "getting medical therapy" for her depression.  Id.

**United States District Court**
For the Northern District of California

1    By August 2007, Plaintiff's blood sugar was very high, she was inconsistent with her

2 medication intake and she started drinking alcohol. AR 259. Dr. Rosal noted that she needed to

3 officially evaluate Plaintiff because Plaintiff was "no longer getting counseling." Id. Dr. Rosal

4 assessed that Plaintiff had uncontrolled diabetes, depression, chronic pain, dependence problems,

5 and that Plaintiff did not show up for her appointments on multiple occasions ("multiple no shows").

6 Id. Further, Dr. Rosal assessed that Plaintiff needed to be consistent in her adherence to medication

7 and appointments. Id. On November 21, 2007, Plaintiff reported great depression because her

8 daughter and granddaughter were placed in a group home; she also went dancing and then "felt LLQ

9 [lower left quadrant] pain." AR 256. On the same date, Dr. Rosal also rejected Plaintiff's request

10 for more Vicodin for her knee and foot pain because she was concerned about possible increased

11 medication tolerance. Id. Three days later, on November 24, 2007, Plaintiff was hospitalized for

12 pelvic inflammatory disease at Salinas Valley Memorial Healthcare System. AR 293. Plaintiff's

13 consultation report indicated that Plaintiff denied any history of alcohol use to the admitting doctor,

14 Norman D. Nelson, M.D. AR 294-97.

15    Plaintiff complained again of leg pain in December 2007, but Dr. Rosal noted that she

16 missed her foot appointment. AR 255. Dr. Rosal also noted that Plaintiff's diabetes was

17 uncontrolled because Plaintiff was non-adherent with her medication or diet and she continued to

18 drink heavily. AR 255. In February 2008, Dr. Rosal's treatment notes indicated that Plaintiff

19 reported lower levels of stress and that Plaintiff attended Alcoholics Anonymous meetings,

20 Narcotics Anonymous meetings, and meditation class. AR 356. The next month, in March 2008,

21 Dr. Rosal noted that Plaintiff continued to consume alcohol ("Admits to drinking a 'monster'"), and

22 Plaintiff missed another appointment with Dr. Smith. AR 354.

23    On July 7, 2008, Dr. Rosal's treatment notes indicated that Plaintiff has "[n]o insurance."

24 AR 415. Dr. Rosal's next treatment note for Plaintiff is dated March 26, 2009. AR 413.

25    **2.    Dr. Scaramozzino**

26    In response to Plaintiff's application for Social Security benefits filed on December 3, 2007

27 (AR 120-129), on March 25, 2008, James Scaramozzino, Ph.D, a licensed clinical psychologist,

28 examined Plaintiff. AR 362-67. Dr. Scaramozzino's psychiatric evaluation indicated that Plaintiff

was seeking SSI benefits because "I'm depressed and forget things." Id. Plaintiff complained of

having chronic pain in her feet and knees for about four years. Id. She also complained of

depressed mood, poor memory, and concentration, but Dr. Scaramozzino noted that Plaintiff did

"not appear to be in any distress at all." Id.

Dr. Scaramozzino noted that Plaintiff's "employment history was not clear," and that "[t]here

is some question about her quality of work." AR 363. For Plaintiff's mental status examination, Dr.

Scaramozzino noted that Plaintiff was cooperative, had a hopeful attitude, and had appropriate

thought content. AR 364. Dr. Scaramozzino noted that Plaintiff's mood was mildly depressed and

her sleep was influenced by pain in her feet and knees. Id. Plaintiff denied "suicidal ideations" and

her appetite was within normal limits. Id.

In assessing Plaintiff's intellectual functioning, Dr. Scaramozzino noted that it appeared

within the below average range. Plaintiff's memory, however, was intact and her knowledge was

consistent with her education level and socioeconomic background. Id. Plaintiff was able to

identify three Presidents and California's capital and governor. Id. Plaintiff had difficulty

performing simple mathematics but her concentration was within normal limits. AR 365. Dr.

Scaramozzino considered Plaintiff's judgment to be within normal limits. Id.

In Plaintiff's prognosis, Dr. Scaramozzino opined that there did not appear to be any

evidence that Plaintiff exaggerated her symptoms, nor were there any inconsistencies throughout the

evaluation. AR 366. Dr. Scaramozzino opined that Plaintiff's symptom severity was within the low

end of the mild range, and she is not interested in psychotherapy. Id. Dr. Scaramozzino opined that

Plaintiff seemed "primarily focused on getting access to a regular source of income which seem[ed]

to coincide with her daughter leaving [her] last year, reducing her overall income." Id. Dr.

Scaramozzino assigned Plaintiff a Global Assessment of Functioning (GAF) score of 62.[1] Dr.

Scaramozzino noted that Plaintiff could manage her own funds, and her ability to comprehend

simple and detailed instructions was not significantly impaired. Her ability to interact with others,

---

[1]A GAF of 61-70 indicates "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (4th ed. 2000, Text Revision) (DSM-IV), 34.

United States District Court
For the Northern District of California

following instructions, maintain concentration and attention, deal with changes in a work

environment, and handle an ordinary routine was also not significantly impaired.  AR 366-67.

### 3.   Non-Examining Physicians

Plaintiff's medical records were reviewed by physicians in the Disability Determination

Services (hereinafter "DDS").  Dr. Biala conducted a psychiatric review of Plaintiff dated April 16,

2008, and concluded that Plaintiff would have mild restrictions of activities of daily living, mild

difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration,

persistence or pace.  AR 376.  Dr. Biala also concluded that Plaintiff's physical impairments were

non-severe, agreeing with a prior assessment by Dr. Quint that "[p]ain considered but feel physical

is non-severe."  AR 383.  State agency physician Dr. Frye agreed with the assessment that Plaintiff's

physical impairments were non-severe.  AR 399-400.

### 4.   Residual Functional Capacity Questionnaire

On July 11, 2008, Dr. Rosal completed a physical residual functional capacity questionnaire

for Plaintiff.  AR 402-06, 415.  Dr. Rosal noted that Plaintiff has plantar fasciitis with increased pain

upon walking, and the pain migrates up to her back.  AR 402.  However, Dr. Rosal noted that her

objective signs were normal.  Id.  In the questionnaire, Plaintiff's depression contributed to the

severity of her symptoms and functional limitations.  AR 403.  Dr. Rosal noted that Plaintiff could

sit for ten minutes at one time and stand for five minutes at one time; sit, stand, and walk for less

than two hours in an eight-hour day.  AR 403-04.  Dr. Rosal also noted that Plaintiff did not require

the assistance of a cane or any other assistive device.  AR 404.  She wrote that Plaintiff could

occasionally lift up to 20 pounds and frequently lift up to ten pounds; could occasionally stoop,

never crouch or squat, and rarely climb.  AR 405.  When Plaintiff's impairments are bad, Dr. Rosal

noted that Plaintiff would miss about three days of work per month as a result of treatment or

impairments.  AR 406.

DDS physician Dr. Biala completed a mental residual functional capacity assessment of

Plaintiff dated April 16, 2008.  Dr. Biala concluded that Plaintiff's mental activities in the assessed

areas of understanding and memory were either moderately or not significantly limited; were either

moderately or not significantly limited in sustained concentration and persistence; were not

1    significantly limited in social interaction; and were not significantly limited in adaptation.  AR 379-

2    381.

3                **B.      Relevant Hearing Testimony**

4                         **1.      Plaintiff**

5         In the hearing before the ALJ on November 17, 2009, Plaintiff testified that she stopped

6    working in 2005 because of "excruciating pain" in her right foot.  AR 43, 50-51.  Plaintiff testified

7    that she could stand for five minutes at a time and sit for about five minutes at a time before she

8    experienced pain again.  AR 52-53.  She testified that she used a cane to walk, and that her right foot

9    dragged when she walked.  AR 54-55.  Plaintiff also testified that she suffered from depression and

10   had past drug abuse.  AR 59-60.  When the ALJ asked Plaintiff about dancing, Plaintiff testified that

11   she watched her friends dance while she sat down, and she testified that she did not dance.  AR 67.

12   Further, Plaintiff testified that she lost her Medi-Cal insurance coverage when her daughter turned

13   18 years old.  AR 55-56.  Plaintiff testified that she was without treatment since she was terminated

14   from Medi-Cal in October, presumably in 2008.  AR 56.

15                        **2.      Vocational Expert**

16        Vocational expert Darlene McQuary testified at trial.  The ALJ noted that in his

17   psychological evaluation, Dr. Scaramozzino opined that Plaintiff  has "learning disorder, pain

18   disorder, cocaine abuse, depressive disorder, [and] personality disorder."  AR 64.  Based on Dr.

19   Scaramozzino's assessment, the vocational expert testified that with a sit/stand option, Plaintiff can

20   work as an assembler, and that there existed 22,000 jobs in the region.  AR 27-28, 65.  The

21   vocational expert also considered Dr. Rosal's RFC assessment (AR 401-06), and testified that a

22   hypothetical individual with the limitations set forth by Dr. Rosal would not be able to perform any

23   significant number of jobs in the region.  AR 65-66.

24                        **3.      Dr. Gerber**

25        Stephen Gerber, M.D., a board certified specialist in internal medicine and cardiovascular

26   medicine, reviewed Plaintiff's records and testified at the hearing.  AR 45-47.  Dr. Gerber testified

27   that Plaintiff has the ability "to stand and/or walk at least ... two hours of an eight hour day, sit

28   without limit, lift and carry of [sic] ten and 20 [pounds] with occasional posturals and no heights,

**United States District Court**
For the Northern District of California

7

hazards, ladders or scaffolding." AR 46.  Dr. Gerber testified that he considered Plaintiff's April

2006 heel spurs surgery in his functional limitation testimony.  AR 47.

### C. Final Decision

In his decision dated January 26, 2010, the ALJ found that Plaintiff was not disabled within

the meaning of the Social Security Act from July 1, 2006 through the date of the decision.  AR 18.

Using the SSA's five-step sequential evaluation process, the ALJ concluded, first, that Plaintiff has

not engaged any substantial gainful activity since July 1, 2006.  AR 20.  Second, the ALJ found that

Plaintiff has severe impairments of plantar fasciitis and obesity.  AR 20-21.  At the third step, the

ALJ found that Plaintiff's impairments or combination of impairments do not meet nor medically

equate to any of the presumptively disabling listed impairments.  AR 22-23.

Fourth, the ALJ found that Plaintiff has the residual functional capacity to perform sedentary

work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a).  AR 23-27.  The ALJ agreed with the

DDS physicians' opinions that Plaintiff's physical condition is non-severe.  AR 26.  The ALJ found

that the medical evidence in the case record "establishes that the claimant's testimony regarding her

symptoms is not entirely credible."  Id.  In reaching this conclusion, the ALJ found that: (1) there

was little objective evidence in 2006 (post surgery) and 2007 to indicate that Plaintiff's heel spur

was a continuing condition and to substantiate her subjective complaints of pain; (2) the treatment

notes are, in substance, a recitation of the claimant's subjective complaints; (3) Plaintiff was non-

compliant with medication and diet related to her diabetes on multiple occasions in 2007; (4) Dr.

Rosal's note that Plaintiff went dancing and "then felt left lower quadrant pain" conflicts with

Plaintiff's hearing testimony that she went dancing with her friends but did not dance; (5) Plaintiff's

acknowledgment that she cleaned dishes, went shopping, and held her grandchild for a few minutes

are at a level fundamentally inconsistent with her allegations of disabling symptoms; (6) the ALJ

gave little weight to Dr. Rosal's opinions because many of them are inconsistent with the complete

record; and (7) SSA administration personnel did not note any observed limitations during Plaintiff's

personal interview.  AR 23-26.  The ALJ also carefully observed Plaintiff at the hearing, and found

that Plaintiff's sufficient concentration and ability to sit cast doubt upon the credibility of her

testimony as to alleged disability.  AR 26.  In addition, the ALJ noted that Plaintiff had a large gap

**United States District Court**
For the Northern District of California

in the treatment records during 2008, but acknowledged that Plaintiff testified at the hearing that she stopped seeking treatment after her Medi-Cal insurance was terminated.  AR 25.

The ALJ gave significant weight to the opinions of Dr. Gerber and Dr. Scaramozzino because both opinions were consistent with the record as a whole.  AR 26.  Dr. Gerber testified that Plaintiff would be able to stand/walk for at least two hours out of an eight-hour work day, lift/carry twenty pounds occasionally and ten pounds frequently.  Id.  Plaintiff must also avoid more than occasional stooping, kneeling, crouching, crawling, balancing, and the climbing of ramps/stairs.  Id.  Dr. Gerber further testified that Plaintiff must avoid any work related hazards and the climbing of ladders or scaffolds.  Id.  The ALJ, however, found that Plaintiff's residual functional capacity should have greater restrictions than Dr. Gerber opined.  Id.  The ALJ gave significant weight to the opinions of the DDS physicians, although the ALJ determined that Plaintiff's plantar fasciitis was severe and that Plaintiff only had mild restrictions in concentration, persistence, and pace.  AR 26-27.  The ALJ determined that Plaintiff can stand/walk no more than two hours out of an eight-hour workday, must avoid more than occasional stooping, kneeling, crouching, crawling, balancing, and the climbing of ramps/stairs, and must avoid any work related hazards and the climbing of ladders or scaffolds.  AR 23.

The ALJ found that Plaintiff is unable to perform any of her past relevant work as a house cleaner and supermarket representative because such work would require a light level of exertion.  AR 27.  The ALJ also found that transferability of Plaintiff's job skills is not an issue because Plaintiff's past relevant work is unskilled.  AR 27.

At the fifth step, the ALJ concluded that, based on the vocational expert's opinion, and considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy.  AR 27-28.  Thus, the ALJ found that Plaintiff has not been under a disability, as defined by the Social Security Act, from July 1, 2006 through January 26, 2010, the date of the ALJ's final decision.  AR 28.

On October 5, 2010, the ALJ's decision became the SSA Commissioner's final decision when the Order of Appeals Council declined to review it.  AR 1-5.

United States District Court
For the Northern District of California

**III.    Standard of Review**

Pursuant to 42 U.S.C. § 405(g), the Court's jurisdiction is limited to determining whether the findings of fact in the ALJ's decision are supported by substantial evidence or were premised on legal error.  42 U.S.C. § 405(g); see Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  The Court must affirm if the Commissioner's decision is supported by substantial evidence and applies the correct legal standards.  Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001).  Substantial evidence is relevant evidence which a reasonable person might accept as adequate in support of a conclusion.  Morgan v. Commissioner of Social Security Administration, 169 F.3d 595, 599 (9th Cir. 1999).

To determine whether the ALJ's decision is supported by substantial evidence, courts review the administrative record as a whole, weighing both the evidence that supports and detracts from the ALJ's decision.  Sandgathe v. Chater, 18 F.3d 978, 980 (9th Cir. 1996) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)).  If the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  An ALJ's decision will not be reversed for harmless error.  Id.

**A.    Definition and Determination of Disability**

To qualify for disability insurance benefits, Plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The SSA has established a five-step sequential evaluation process for determining whether an individual is disabled.  20 C.F.R. § 404.152(a) and 416.920(a).  The steps are followed in order, and if the SSA finds that the claimant is either disabled or not disabled at a step, then the SSA makes the determination and does not go on to the next step; the SSA moves onto the next step if the determination cannot be made.  20 C.F.R. § 404.1520.

At step one, the SSA must determine whether the claimant is engaged in substantial gainful activity; if the claimant does not engaged in substantial gainful activity, the process proceeds to step two.  20 C.F.R. § 404.1520(b) and 416.920(b).  Second, the SSA must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments

**United States District Court**
For the Northern District of California

that is "severe."  20 C.F.R. § 404.1520(c) and § 416.920(c).  If the claimant has a severe impairment or combination of impairments, the analysis proceeds the third step to determine whether the impairment or combination of impairments is medically equivalent to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(d); 404.1525; 416.920(d); 416.925; 416.926.  The SSA presumes that a claimant is disabled if the impairment or combination of impairments medically equals the criteria of the listing impairments.

If the claimant's impairment or combination of impairments does not meet or equate to one of the listings, the SSA proceeds to step four to determine the claimant's residual functional capacity, that is, what work activities the claimant can still perform despite the impairments.  20 C.F.R. §§ 404.1520(e) and 416.920(e).  If the claimant has the residual functional capacity to perform her past relevant work, the claimant is not disabled; if not, the analysis proceeds to the fifth step to determine whether the claimant can perform other work, considering the claimant's residual functional capacity, age, education, and work experience.  20 C.F.R. §§ 404.1520(g) and 416.920(g).

## B.     Credibility

In order to find a claimant's testimony regarding the severity of her pain and impairments unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.  Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008).  The ALJ conducts a two-step analysis to assess subjective testimony.  Under step one, the claimant "must produce objective medical evidence of an underlying impairment" or impairments that could reasonably be expected to produce some degree of symptom.  Smolen v. Chater, 80 F.3d 1273, 1281-82 (9th Cir. 1996).  If the claimant meets this threshold and there is no affirmative evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so."  Id. at 1281, 1283-84.

The ALJ may consider many factors in weight a claimant's credibility, including: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a

1   prescribed course of treatment; and (3) claimant's daily activities.  Id. at 1284.  The Court may not

2   second-guess the ALJ's credibility finding if it is supported by substantial evidence in the record.

3   Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

**IV.     Discussion**

5           Plaintiff alleges that she is disabled and unable to work at any exertional level.  Plaintiff

6   alleges that she is severely impaired and suffers from various impairments, including Type 2

7   diabetes, foot problems (plantar fasciitis and a heel spur) knee and lower leg problems, low back

8   pain depression and obesity.  Plaintiff's Motion for Summary Judgment (hereinafter "Pl's Mot.") at

9   3.  Plaintiff contends that the ALJ committed three errors in finding her not disabled:

10          (1)     ALJ failed to consider the combined effects of all of Plaintiff's impairments;

11          (2)     ALJ failed to give proper weight to the opinion of Plaintiff's treating physician; and

12          (3)     ALJ's credibility finding regarding Plaintiff is not supported by substantial evidence.

13   These three purported errors, along with the Commissioner's responses, are addressed below.

**A.      The ALJ Properly Evaluated Plaintiff's Impairments and Medical Records**

15          In Social Security cases, the ALJ has "'a special duty to fully and fairly develop the record

16   and to assure that the claimant's interests are considered'" even when the claimant is represented by

17   counsel.  Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d

18   441, 443 (9th Cir. 1983)).  The ALJ shall consider the combined effects of all of the individual's

19   impairments whether or not any individual impairment, if considered separately, would be

20   considered severe or not.  See 42 U.S.C. § 423(d)(2)(B) ("the Secretary shall consider the combined

21   effect of all the individual's impairments without regard to whether any such impairment, if

22   considered separately, would be of such severity") (emphasis added); 20 C.F.R. § 404.1545(e),

23   § 416.945(e) ("we will consider the limiting effects of all your impairment(s), even those that are not

24   severe, in determining your residual functional capacity") (emphasis added).

25          Plaintiff argues that the ALJ committed error by finding that Plaintiff had only two severe

26   impairments of plantar faciitis and obesity since the medical record contained additional alleged

27   impairments.  Pl's Mot. at 4-6.  Plaintiff contends that the ALJ should have considered the combined

28   effects of all of the alleged impairments in the medical record, citing 20 C.F.R. § 404.1523 and

United States District Court
For the Northern District of California

12

1   <u>Celaya v. Halter</u>, 332 F.3d 1177, 1182 (9th Cir. 2003).  For example, Plaintiff cites various medical

2   records to indicate additional impairments that the ALJ allegedly did not consider for the collective

3   impact on Plaintiff's disability claim: depression (AR 258-60, 262, 297, 413, 415), learning

4   disorders (AR 21, 64, 365), and knee and leg problems (AR 272-74).  Plaintiff argues that the ALJ

5   ignored the impact of her additional alleged impairments on her compliance with medication for

6   diabetes.  AR 264 (stopped taking Metformin because it caused Plaintiff to have nervous and upset

7   stomachaches), 261 (suspended intake of Metformin for a CT scan).  Plaintiff also argues that the

8   ALJ did not properly consider Plaintiff's depression because the ALJ gave little weight to Dr.

9   Rosal's opinion, the only physician that opined that her depression was a serious problem that

10  contributed to the severity of her alleged disabling symptoms and functional limitations.  AR 403;

11  Pl's Mot. at 5.  In addition, Plaintiff argues that the ALJ failed to consider her knee problems, and

12  offered only a conclusory finding on how Plaintiff's obesity may interact with co-existing

13  impairments.  Pl's Mot. at 6.

14         Defendant counters that the ALJ applied the proper legal standard to evaluate Plaintiff's

15  medical records, and that the ALJ's decision was supported by substantial evidence.  Defendant

16  argues that the ALJ relied on substantial evidence, including Dr. Scaramozzino's examination, to

17  find that Plaintiff's mental impairments were not severe, citing <u>Tonapetyan v. Halter</u>, 242 F.3d 1144,

18  1149 (9th Cir. 2001) and 42 U.S.C. § 405(g).  Def.'s X-Mot. at 6.  Defendant also contends that the

19  consistency of Dr. Gerber's expert testimony with Plaintiff's record constituted substantial evidence

20  upon which the ALJ relied.  Defendant argues that Plaintiff offered no evidence to demonstrate how

21  the collective effect of Plaintiff's alleged impairments limited her more than the ALJ's findings,

22  noting that only Dr. Rosal opined that Plaintiff was more limited than the ALJ's findings, and that

23  the ALJ offered specific, legitimate reasons to reject Dr. Rosal's opinion.

24         The record demonstrates that the ALJ reviewed an extensive compilation of Plaintiff's

25  medical records, including evidence of Plaintiff's additional impairments.  The ALJ's determination

26  that Plaintiff's alleged impairments or the combined effects of the alleged impairments do not meet

27  nor medically equate to any of the presumptively disabling listed impairments is supported by

28  substantial evidence.

**United States District Court**
For the Northern District of California

### 1.      Plaintiff's Various Mental Impairment Claims

With respect to Plaintiff's claim that the ALJ ignored her depression and learning disorders, the ALJ relied on substantial evidence to properly find that these mental impairments were non-severe.  The ALJ gave significant weight to Dr. Scaramozzino's opinion because it was consistent with Plaintiff's record as a whole.  AR 26.  Relying on Dr. Scaramozzino's mental status examination report, the ALJ found that Plaintiff's various mental impairments of "learning disorder, NOS; Pain disorder; Cocaine abuse, sustained remission; Depressive order, and a Personality disorder," does not cause more than minimal limitation in Plaintiff's ability to perform basic mental work activities and is therefore non-severe.  AR 21-22.  Further, Dr. Scaramozzino opined that Plaintiff will have no significant work related limitations.  AR 362-367.  Contrary to what Plaintiff argues, the ALJ did not ignore her various mental impairments.  Rather, the ALJ properly evaluated Plaintiff's mental impairments by relying on Dr. Scaramozzino's opinion because it was consistent with Plaintiff's care record, which also constituted substantial evidence on which the ALJ relied. AR 362-67.

Further, the ALJ's reliance on the opinion of the DDS psychological consultant, Dr. Biala, constituted additional substantial evidence to find that Plaintiff's mental impairments were non-severe.  Despite Plaintiff's various mental impairments, Dr. Biala opined that Plaintiff would have only mild restrictions in daily living activities, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.  AR 22, 376.

Although Dr. Rosal opined that Plaintiff's depression was a serious problem that contributed to her disabling symptoms and functional limitations, the ALJ offered specific, legitimate reasons to reject Dr. Rosal's opinion.  First, the ALJ noted that Dr. Rosal did not rely on objective medical evidence, but rather on Plaintiff's non-credible subjective complaints.  AR 25.  Second, Dr. Rosal's opinion was inconsistent with the record because Dr. Rosal's clinical findings contradict Dr. Rosal's reliance on Plaintiff's subjective report of symptoms and limitations, and, as discussed below, the ALJ provided valid reasons for questioning the reliability of Plaintiff's subjective complaints.  AR 25.

**United States District Court**
For the Northern District of California

### 2.   Plaintiff's Various Physical Impairments

The record demonstrates that the ALJ did not ignore Plaintiff's knee problems or make a conclusory finding on how her obesity may interact with co-existing impairments.  For example, the ALJ observed Plaintiff using a cane at the hearing, and Plaintiff testified that Dr. Rosal advised her to use a cane.  AR 26, 254.  Yet the ALJ could not find any notes in the record to show a prescription for a cane.  AR 26.  Additionally, in Plaintiff's functional capacity questionnaire, Dr. Rosal specifically noted that Plaintiff did not require the assistance of a cane.  AR 404.  Likewise, Plaintiff performed daily activities, which were at a level fundamentally inconsistent with her alleged disabling symptoms.  AR 26.  Plaintiff testified that she could not sit for more than five minutes without feeling pain (AR 53), she could not walk more than half a block before feeling pain (AR 54) and she does not drive (AR 59).  Further, Dr. Rosal noted in Plaintiff's functional capacity questionnaire that Plaintiff had limited ability to lift heavy weights.  AR 405.  Yet Plaintiff testified that she washed dishes, cups, and pans, lifted her grandchildren, could hold an infant, and went shopping for food.  AR 56-59.

Furthermore, the ALJ noted that Plaintiff had complained of several other physical impairments, including "cysts, a heart murmur, hyperglycemia, and chest pain."  AR 21.  The ALJ, however, found that these impairments are either under good control, did not interfere with Plaintiff's ability to function, or were not medically determinable impairments.  AR 21.

### 3.   Plaintiff's Non-Compliance With Medication For Diabetes

With respect to the ALJ's determination that Plaintiff was non-compliant with her medication, Plaintiff contends that the ALJ ignored the impact of her impairments on her compliance with diabetes medication.  The ALJ noted that Plaintiff offered credible reasons to be non-compliant with her diabetes medication on a couple of occasions, but also considered Plaintiff's overall record of being non-compliant with her diabetes medication and diabetes diet.  In December 2006, Dr. Rosal's treatment note indicated that Plaintiff was non-compliant with her diabetes medication because it caused Plaintiff to have nausea and upset stomachaches.  AR 264.  However, in September 2006, prior to complaining of nausea and upset stomachaches, Plaintiff had been non-compliant with her diabetes medication and diabetes diet.  AR 267.  Furthermore, in February 2007,

**United States District Court**
For the Northern District of California

1   Dr. Rosal noted that Plaintiff suspended her diabetes medication for a CT scan. AR 261. But even

2   five months after Plaintiff's CT scan in August 2007, Dr. Rosal noted that Plaintiff's blood sugar

3   was very high, she was inconsistent with her medication intake, and she started to consume alcohol.

4   AR 259. The record demonstrates that aside from Plaintiff's excusable instances of being non-

5   compliant with her medication, Plaintiff was inexcusably non-compliant with her medication on

6   other occasions. The ALJ's finding of non-compliance with medication is supported by substantial

7   evidence.

8   **4.    The ALJ Considered The Combined Effects of All of Claimant's
             Impairments**

9

10   Plaintiff contends that the ALJ failed to consider the combined effect of her alleged

11   impairments on her alleged disabling symptoms and functional limitations. Pl's Mot. at 6. The

12   ALJ's decision, however, indicates that he considered Plaintiff's various mental impairments,

13   including depression and learning disorder, but relied on Dr. Scaramozzino's opinion that the mental

14   impairments do not cause more than minimal limitation in Plaintiff's ability to perform basic mental

15   work activities and is therefore non-severe. AR 21-22.

16   With respect to Plaintiff's diabetes and her knee and leg problems, only Dr. Rosal opined

17   that Plaintiff's functional capacity was more limited than what the ALJ found, and the ALJ provided

18   specific, legitimate reasons to reject Dr. Rosal's opinion. The ALJ did consider Plaintiff's

19   subjective complaints of various physical impairments but rejected Plaintiff's subjective complaints

20   because they were not credible and were not supported by medical evidence. The ALJ emphasized

21   that Plaintiff's record lacked objective medical evidence in 2006 (post surgery) and 2007 to indicate

22   that Plaintiff's heel spur was a continuing condition and to substantiate her subjective complaints of

23   pain.[2] AR 24. The objective evidence of Plaintiff's record was limited to lab results showing high

24   blood sugar level and that Plaintiff had Chlamydia. AR 24. The Social Security Act expressly

25   prohibits granting disability benefits based solely on a claimant's subjective complaints. See 42

26   U.S.C. § 423 (d)(5)(A) ("[a]n individual's statement as to pain or other symptoms shall not alone be

27   _____

28   [2] Addressing her credibility, Plaintiff cites an x-ray in 2004 (AR 289) and a bone scan in 2005 (AR 291) to argue that the record contained objective medical evidence to support heel spur impairment. The ALJ, however, noted that the record lacked objective medical evidence in 2006 (post surgery) and 2007. The medical records preceding Plaintiff's April 2006 surgery do not address the ALJ's concern.

1    conclusive evidence of disability").

2          Although the Court may award benefits by crediting as true evidence which it finds the ALJ

3    improperly rejected, this "crediting as true" doctrine is not mandatory.  See Connett v. Barnhart, 340

4    F.3d 871, 876 (9th Cir. 2003) ("we are not convinced that the 'crediting as true' doctrine is

5    mandatory in the Ninth Circuit").  Plaintiff argues that this Court should apply this doctrine in this

6    case if the ALJ improperly discounted Dr. Rosal's opinion and Plaintiff's subjective testimony,

7    particularly where the vocational expert testified that a hypothetical individual with the limitations

8    set forth by Dr. Rosal would not be able to perform many jobs.  AR 65-66.  The ALJ, however,

9    offered specific, legitimate reasons to reject Dr. Rosal's opinion because it was not consistent with

10   the record.  The ALJ also had substantial evidence to doubt the credibility of Plaintiff's subjective

11   complaints.  Therefore, the hypothetical individual based on Dr. Rosal's opinion was more limited

12   that the ALJ properly assessed Plaintiff to be.

13         Lacking the necessary objective medical evidence to substantiate Plaintiff's subjective

14   complaints, the ALJ could not consider them alone to be conclusive evidence for finding Plaintiff's

15   disability status.  The ALJ properly evaluated Plaintiff's care record as a whole and based his

16   decision on substantial evidence.

17   **B.       The ALJ Offered Specific And Legitimate Reasons Supported By Substantial
             Evidence In The Record To Reject The Opinion Of The Treating Physician**

18

19         Decisions by the Ninth Circuit distinguish among the opinions of three types of physicians:

20   (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  Lester v.

21   Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Generally, the SSA will give more weight to the opinion

22   of the claimant's treating physician than to the opinion of a source who has not examined the

23   claimant.  20 C.F.R. § 404.1527(d)(1) and § 416.927(d)(1); Magallanes v. Bowen, 881 F.2d 747,

24   751 (9th Cir. 1989).  Although a treating physician's opinion is generally afforded the greatest

25   weight in disability cases, it is not binding on an ALJ with respect to the existence of an impairment

26   or the ultimate determination of disability.  Magallanes, 881 F.2d at 751.  When there is a conflict

27   between the opinions of a treating physician and an examining physician, the ALJ may disregard the

28   treating physician's opinion only if he sets forth "specific and legitimate reasons supported by

**United States District Court**
For the Northern District of California

1   substantial evidence in the record for doing so." Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th

2   Cir. 2001) (quoting Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996)).

3          Two different standards may apply when an ALJ rejects a treating physician's opinion,

4   depending on whether that opinion is disputed by a non-treating doctor.  First, to reject an

5   uncontroverted treating doctor's report, the ALJ must set forth clear and convincing reasons for

6   doing so.  Magallanes, 881 F.2d at 751.  Second, to reject the opinion of a treating physician that

7   conflicts with the report of an examining physician, the ALJ "must make findings setting forth

8   specific, legitimate reasons for doing so that are based on substantial evidence in the record."

9   Magallanes, 881 F.2d at 751 (quoting Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)).  The

10  ALJ can show specific, legitimate reasons based on substantial evidence by "setting out a detailed

11  and thorough summary of the facts and conflicting clinical evidence, stating his interpretation

12  thereof and making findings."  Id. (quoting Cotton v. Bowen, 799 F.2d 1403, 1408 (9th Cir. 1986)).

13  Here, the latter standard applies because the opinion of Dr. Scaramozzino, the examining psychiatric

14  consultant, controverts the opinion of Plaintiff's treating physician, Dr. Rosal.

15         Plaintiff contends that the ALJ failed to give proper weight to Plaintiff's treating physician

16  because the ALJ only mentioned Dr. Rosal twice in his decision, citing Benecke v. Barnhart, 379

17  F.3d 587, 592 (9th Cir. 2004) and 20 C.F.R. § 404.1527(d)(2).  Pl's Mot. at 6-7.  Further, Plaintiff

18  argues that the ALJ committed error by relying on the opinions of consulting expert Dr. Gerber

19  because Dr. Gerber's opinion lacked critical medical evidence that was available to Dr. Rosal.

20  Plaintiff also argues that the ALJ's reliance on Dr. Scaramozzino was error because Dr.

21  Scaramozzino's conclusion contradicted his reported findings and the Listings.

22         Here, the ALJ offered specific, legitimate reasons to reject Dr. Rosal's opinion in light of the

23  conflicting findings by the examining physician Dr. Scaramozzino.  As discussed earlier, Dr. Rosal

24  did not rely on objective medical evidence, but rather on Plaintiff's non-credible subjective

25  complaints.  AR 25.  Def.'s X-Mot. at 8.  Second, Dr. Rosal's opinion was inconsistent with

26  Plaintiff's record.  AR 25.

27                    **1.      Dr. Rosal's Opinion Was Based on Subjective Complaints**

28  The ALJ "may disregard the treating physician's opinion whether or not that opinion is

18

United States District Court
For the Northern District of California

1   contradicted." <u>Magallanes</u>, 881 F.2d at 751.  Here, the ALJ rejected the treating doctor's opinion

2   because Plaintiff's record lacked objective medical evidence in 2006 (post surgery) and 2007 to

3   indicate that Plaintiff's heel spur was a continuing condition and to substantiate her subjective

4   complaints of pain.

5          First, the ALJ noted that Dr. Rosal did not rely on objective medical evidence, but rather on

6   Plaintiff's subjective complaints.  AR 25.  As the ALJ pointed out, Dr. Rosal's clinical findings and

7   observation of Plaintiff's objective signs were "normal," consistent with the treatment records

8   summarized from 2005 to 2007.  AR 25.  Yet, Dr. Rosal relied heavily on Plaintiff's subjective

9   complaints and uncritically accepted as true when Dr. Rosal filled out Plaintiff's physical residual

10  functional capacity questionnaire.  AR 25, 402-06.  This inconsistency gave the ALJ a legitimate

11  reason to reject Dr. Rosal's opinion and give little weight to Dr. Rosal's physical residual functional

12  capacity questionnaire.  Because the record lacked clinical signs and laboratory findings (i.e.,

13  objective medical evidence) to support Plaintiff's alleged disabling symptoms, AR 26, the ALJ

14  properly concluded that Dr. Rosal based her opinion on Plaintiff's subjective complaints.  Plaintiff's

15  lack of credibility gave the ALJ a specific and legitimate reason to doubt the reliability of Plaintiff's

16  subjective complaints.  Because Dr. Rosal relied on Plaintiff's non-credible subjective complaints,

17  the ALJ properly gave little weight to Dr. Rosal's opinion.

18          **2.      ALJ's Rejection of Dr. Rosal's Opinion Was Supported by Substantial
                      Evidence in the Record**

19

20          In rejecting Dr. Rosal's opinion, the ALJ gave significant weight to the opinions of testifying

21  medical expert Dr. Gerber, psychiatric examiner Dr. Scaramozzino, and the consulting DDS

22  physicians because their opinions were consistent with the record as a whole.  AR 26-27.  With

23  respect to Plaintiff's physical impairments, the ALJ relied on Dr. Gerber's expert opinion to find that

24  Plaintiff has the residual functional capacity to perform a range of sedentary work because Dr.

25  Gerber based his expert testimony on the record.  AR 26, 46.  Plaintiff contends that the ALJ

26  committed error by relying on Dr. Gerber's expert testimony because Dr. Gerber testified without

27  having seen the operative report from Plaintiff's heel surgery.  AR 46; Pl's Mot. at 6-7.  Plaintiff

28  contends that, because Dr. Gerber did not consider this "crucial piece of evidence" that was

**United States District Court**
For the Northern District of California

1    available to Dr. Rosal, the ALJ's reliance on Dr. Gerber's opinion was error.  Pl's Mot. at 7.  Dr.

2    Gerber, however, testified that he had considered Plaintiff's right heel spur surgery in his functional

3    limitation testimony.  AR 47.

4         With respect to Plaintiff's mental condition, the ALJ relied on Dr. Scaramozzino's opinion to

5    find that Plaintiff's mental impairments did not significantly limit her ability to perform work related

6    activities.  AR 21-22.  Pursuant to 20 C.F.R., Appendix 1 to Subpart P of Part 404, § 12.00(C) of the

7    Listings of Impairments and the disability regulations for evaluating mental disorders, Dr.

8    Scaramozzino considered Plaintiff's performance in four broad functional areas: (1) daily living

9    (mild limitation); (2) social functioning (mild limitation); (3) concentration, persistence or pace

10   (within normal limits); and (4) decompensation (experienced no episodes of decompensation).  AR

11   21-22, 362-67.  Dr. Scaramozzino opined that Plaintiff would have no significant work related

12   limitations.  Id.  Plaintiff argues that the ALJ's reliance on the consultative report of Dr.

13   Scaramozzino, a licensed clinical psychologist, was error because Dr. Scaramozzino performed no

14   objective testing and apparently did not have Plaintiff's medical record.  Pl's Mot. at 7.  Plaintiff

15   argues that Dr. Scaramozzino's report was inconsistent with his mental status examination, and his

16   lack of objective testing contravenes the instructions in the listings for 20 C.F.R., Appendix 1 to

17   Subpart P of Part 404, § 12.00(D) 5.  However, the methods of testing in Listings § 12.00C.3 are

18   merely illustrative, not dispositive.  See Listings § 12.00C.3. ("On mental status examinations,

19   concentration is assessed by tasks such as …") (emphasis added).  Contrary to Plaintiff's argument,

20   Dr. Scaramozzino's conclusion was not contradicted by his own reported findings and the listings.

21   As discussed earlier, Dr. Scaramozzino considered Plaintiff's four broad functional areas set out in

22   the disability regulations for evaluating mental disorders and in § 12.00C of the Listing of

23   Impairments, pursuant to 20 C.F.R., Appendix 1 to Subpart P of Part 404.  As mandated by the

24   instructions of the SSA Disability Evaluation Blue Book, the ALJ noted Dr. Scaramozzino's

25   findings in each of Plaintiff's four broad functional areas.  AR 21-22.  Thus, the ALJ's reliance on

26   Dr. Scaramozzino's report is supported by substantial evidence in the record.

27        Plaintiff argues that Dr. Scaramozzino's failure to conduct standard psychometric tests does

28   not conform to the Commissioner's regulations.  Reply at 3.  Plaintiff cites no Ninth Circuit

United States District Court
For the Northern District of California

1   authority holding that failure to conduct a standardized testing for depression amounts to reversible

2   error.  See, e.g., Andrews v. Shalala, 53 F.3d 1035, 1038 (9th Cir. 1995) (court affirmed defendant's

3   denial of plaintiff's supplemental security income benefits, even though no standardized

4   psychological or intelligence test was conducted when plaintiff's diagnosis included major

5   depression, recurrent, severe; and a schizotypal personality disorder).  Further, Plaintiff cites

6   language from the SSA Disability Evaluation Blue Book, 12.00 (6)(b) Intelligence Test, to argue

7   that Dr. Scaramozzino's mental status examination should not be considered as a standardized test in

8   this context.  However, the language Plaintiff cites indicates that "[s]tandardized intelligence test

9   results are essential to the adjudication of all cases of mental retardation …" Disability Programs,

10  Social Security Online (October 18, 2011)

11  http://www.ssa.gov/disability/professionals/bluebook/12.00-MentalDisorders-Adult.htm (emphasis

12  added).  Plaintiff does not claim to have mental retardation and Plaintiff's argument on this point is

13  thus unpersuasive.

14      Plaintiff cites Benecke v. Barnhart, 379 F.3d 587 (9th Cir. 2004) in support of her argument

15  that the ALJ's reliance on Dr. Scaramozzino's opinion, rather than Dr. Rosal's opinion, constituted

16  reversible error.  Reply at 3.  The Benecke Court affirmed the district court's finding that the ALJ

17  erred in discounting the opinions of Benecke's treating physicians because the record provided little

18  support for the ALJ's credibility finding.  Benecke, 379 at 595.  This case is distinguishable from

19  Benecke, where Benecke's treating physicians were rheumatologist specialists[3] and each of their

20  opinions were consistent with Benecke's diagnosis.  Benecke, 379 at 591.  The Benecke Court stated

21  that the ALJ's "[s]heer disbelief is no substitute for substantial evidence."  Benecke, 379 at 594.

22  Here, by contrast, Dr. Rosal is not a specialist and Dr. Scaramozzino's opinion was consistent with

23  the record.  The ALJ relied on substantial evidence to reject Dr. Rosal's opinion.  Thus, Plaintiff's

24  reliance on Benecke is misplaced.

25      The DDS psychological consultant, Dr. Biala, opined that Plaintiff would have mild

26  restrictions in maintaining social functioning, performing daily living activities, and moderate

27

28      [3]Each rheumatologist's opinion is given greater weight than those of the other physicians because it is an 'opinion of a specialist about medical issues related to his or her area of specialty.' 20 C.F.R. § 404.1527(d)(5)."  Benecke, 379 at 594, n. 4 (emphasis added).

difficulties in maintaining concentration, persistence, or pace.  AR 22, 376.  The ALJ, however,

determined that Plaintiff only had mild restrictions in concentration, persistence, and pace based on

Dr. Scaramozzino's mental status examination which opined that Plaintiff's concentration was

within normal limits and that Plaintiff's ability to maintain concentration and attention was not

significantly impaired.  AR 21-22, 26-27, 366.  The ALJ's findings as to Plaintiff's restrictions were

supported by substantial evidence in the record.  Plaintiff does not contend that the ALJ erred by

finding mild restrictions in concentration, persistence, and pace, rather than moderate restrictions as

opined by Dr. Biala.  Even if the ALJ had erred by finding mild, rather than moderate, restrictions,

any such error was harmless because the psychiatric review questionnaire indicates that neither

moderate nor mild degrees of difficulty in maintaining concentration, persistence, or pace satisfies

the functional criterion for mental disorders.  AR 376.

**C.     The ALJ's Credibility Finding Was Supported By Substantial Evidence**.

Plaintiff contends that the ALJ's credibility determination was not supported by substantial

evidence and that the medical records contradicted the ALJ's findings.  Plaintiff argues that the

records indicated medically determinable impairments to support her subjective complaints of

disabling symptoms and that there was no lack of subjective complaints.  Further, Plaintiff argues

that the records contained clinical signs and laboratory findings to support her case.  For example,

Plaintiff's x-ray in 2004 (AR 289) and bone scan in 2005 (AR 291) indicated a bone spur in her

heel.  Plaintiff also argues that the ALJ cannot base his credibility finding on gaps in her treatment

records because she testified that she lost her insurance coverage after her daughter turned 18.  AR

55-56.  In addition, Plaintiff argues that her temporary improvement where she tolerated Metformin

well (AR 262) and had controlled diabetes (AR 264), should not constitute substantial evidence to

undermine her disability claims, when compared with her physical residual functional capacity

questionnaire (AR 402-06).  Defendant counters that the ALJ made credibility findings that were

supported by the record and were sufficiently specific to show that the ALJ did not arbitrarily

discredit Plaintiff's subjective testimony.

In his decision, the ALJ articulated several "good reasons for questioning the reliability of

the claimant's subjective complaints."  AR 25.  First, the ALJ noted the absence of medically

22

determinable impairments which reasonably could be expected to produce the alleged symptoms. AR 24.  Second, the ALJ noted Plaintiff's non-compliance with diabetes medication and diet on several occasions (AR 255, 259, 261, 267).  Third, the ALJ noted the contradiction between Dr. Rosal's treatment note that Plaintiff went dancing and "then felt LLQ [left lower quadrant] pain" (AR 256, 271) and Plaintiff's testimony that she watched her friends dance but "wasn't actually dancing" (AR 24, 67).  Fourth, Plaintiff had a history of substance abuse (AR 24, 60, 255, 257-58) and alcohol use (AR 24, 295, 354, 356) but testified at the hearing that she did not have a "problem with drinking" (AR 60) and denied any history of alcohol use when she was examined on November 24, 2007 (AR 24, 295).  Fifth, the ALJ noted the contradiction between her statement that she required the assistance of a cane and Dr. Rosal's contrary indication in the physical residual functional capacity questionnaire (AR 26, 404).  Sixth, Plaintiff performed daily activities at a level fundamentally inconsistent with allegations of her disabling symptoms.  AR 26.  Seventh, the ALJ noted that there was no evidence that Plaintiff followed up with her surgeon after foot surgery or that she was not doing well post-operatively (AR 24; see AR 255, 354).  Eighth, neither SSA personnel nor the ALJ observed limitations during Plaintiff's personal interview or at the hearing (AR 26, 53, 403-04).

The specific reasons given by the ALJ in finding that Plaintiff's subjective complaints were not credible are supported by substantial evidence.  Here, the ALJ did not discredit Plaintiff's pain testimony solely on the basis of insufficient objective medical evidence, or base his credibility determination solely on Plaintiff's failure to exhibit pain at the administrative hearing.  Instead, the ALJ made specific findings and identified testimony he found not credible as well as testimony that undermined Plaintiff's subjective complaints.  First, Plaintiff's care record lacked objective medical evidence in 2006 (post surgery) and 2007 to indicate that Plaintiff's heel spur was a continuing condition and to substantiate her subjective complaints of pain.  Second, although the ALJ did not specifically weigh or mention Dr. Rosal's note in the record that Plaintiff was not a malingerer, AR 403, the ALJ indicated that he "has carefully reviewed the full record, including that evidence not cited in [his] decision," AR 23.  Finally, the ALJ cited evidence in the record to support his credibility determination of Plaintiff.  Here, the ALJ's credibility analysis is supported by substantial

1  evidence.  Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1996) ("General findings are insufficient.

2  Rather, the ALJ must identify what testimony is not credible and what evidence undermines the

3  claimant's complaints").

4         **1.**        **The ALJ Had A Proper Basis To Determine That Plaintiff's Prior Inconsistent Statements Concerning Symptoms and Other Topics Were**

5                    **Less Than Candid**.

6        If the ALJ makes specific findings that are supported by the record, the ALJ "may discredit

7  the claimant's allegations based on inconsistencies in the testimony or on relevant character

8  evidence."  Bunnel v. Sullivan, 947 F.2d 341, 346 (9th Cir. 1991).  In September 2005, Plaintiff

9  indicated in the treatment notes that she was dancing twice a week to relieve stress (AR 271), and

10  again claimed to have gone dancing in November 2007 (AR 256).  As the ALJ noted, the treatment

11  notes are in direct contrast to Plaintiff's hearing testimony that she went dancing with her friends but

12  did not dance.  AR 24, 67.  The ALJ properly considered this contradiction as a reason to question

13  Plaintiff's credibility and the reliability of her subjective complaints.

14        The ALJ also found that Plaintiff's inconsistent statements about her substance abuse

15  undermined her credibility.  Multiple treatment notes from 2007 indicate that Plaintiff was drinking

16  alcohol and using illegal drugs.  AR 255, 257-58, 259, 354.  On September 10, 2007, Plaintiff was

17  strongly advised to "stop" her occasional use of cocaine and alcohol (AR 257), yet Plaintiff testified

18  that she was "clean and sober" since her relapse in August 2007 (AR 60).  Plaintiff admitted to

19  drinking a "monster" on March 24, 2008 (AR 354).  But, as the ALJ noted, Plaintiff denied any

20  history of alcohol use to Dr. Nelson during an emergency room visit in November 2007, despite

21  Plaintiff's acknowledged history of alcohol use.  AR 24, 295.  Likewise, at the hearing, Plaintiff

22  denied having "a problem with drinking" (AR 60), yet Plaintiff told Dr. Rosal that she attended

23  Alcoholics Anonymous meetings (AR 356).  Plaintiff's multiple prior inconsistent statements

24  relating to past substance abuse in the record gave the ALJ legitimate reasons to reject Plaintiff's

25  testimony about the severity of her symptoms.  See, e.g., Thomas v. Barnhart, 278 F.3d at 959 (ALJ

26  reasonably determined that the claimant's "lack of candor" about substance abuse "carries over to

27  her descriptions of physical pain"); Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (the

28  ALJ noted "several areas in which the appellant's testimony or behavior was inconsistent with his

own statements or actions," including the fact that his "testimony and various statements regarding his drinking were not consistent").

The ALJ noted that he personally observed additional inconsistencies between Plaintiff's claims and the record that cast doubt on her credibility. For example, in Plaintiff's functional capacity questionnaire, Dr. Rosal noted that Plaintiff could sit for ten minutes at one time and stand for five minutes at one time. AR 403-04. Plaintiff testified that she felt pain if she sat for about five minutes (AR 53), and that her pain is daily, regardless of whether she walked or not. AR 63. The ALJ, however, noted that he "carefully observed the claimant at the hearing, and found that she demonstrated sufficient concentration and ability to sit to cast doubt upon the credibility of her testimony." AR 26. See, e.g., Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (the ALJ's observation that claimant did not act like someone in severe pain was valid as a partial basis for discrediting claimant's subjective pain complaints). Additionally, the ALJ observed Plaintiff using a cane at the hearing, and Plaintiff testified that Dr. Rosal advised her to use a cane. AR 26, 254. Yet the ALJ could not find any notes in the record to show a prescription for a cane. AR 26. Furthermore, in Plaintiff's functional capacity questionnaire, Dr. Rosal specifically noted that Plaintiff did not require the assistance of a cane. AR 404.

Based on these inconsistent statements by Plaintiff, the ALJ has substantial evidence to doubt Plaintiff's credibility, and discredit Plaintiff's alleged subjective claims of disabling symptoms.

> **2.  The ALJ Found Unexplained, or Inadequately Explained, Failure to Seek Treatment or to Follow a Prescribed Course of Treatment.**

Although the Ninth Circuit has held that an unexplained, or inadequately explained, failure to seek treatment can cast doubt on the sincerity of a claimant's pain testimony, Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989), a lack of treatment is not held against the claimant when the record indicates that claimant could not afford it. See Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996) (holding that because the claimant testified that "she had no insurance and could not afford treatment," her failure to comply with medication for her symptoms "is not a clear and convincing reason for discrediting her symptom testimony").

The ALJ noted the "absence of longitudinal records showing regular contact with physicians for long periods" as one of the reasons in reaching his decision. AR 26. The ALJ also acknowledged that Plaintiff testified that she stopped seeking treatment after her medical insurance was terminated. AR 25. However, the ALJ's decision was not entirely based on gaps in Plaintiff's medical record and he articulated several other specific, legitimate reasons to find that Plaintiff was not disabled, as discussed above. AR 26.

Although Plaintiff raises a concern that the ALJ may have based his decision on lack of treatment when she did not have medical coverage, there is no indication from the face of the ALJ decision that the ALJ based his decision on this point. Rather, the decision indicates that the ALJ considered that Plaintiff stopped seeking treatments after her Medi-Cal coverage ran out. AR 25, 56. The ALJ found other unexplained failure to seek treatment, noting that Plaintiff was seen three or four times at the clinic in 2008 for bronchitis and headaches, but only one record indicates that she complained of lower extremity pain. AR 25. Plaintiff was also examined in April 2008 for a fall which caused bruising to her leg, but x-rays and ultrasounds revealed no fractures or evidence of deep vein thrombosis. AR 25, 386.

The ALJ also noted that Plaintiff received counseling but stopped in August 2007. AR 22, 261. The ALJ emphasized that Plaintiff's record in 2007 was filled with subjective complaints of depression, but that the record provided no treatment records indicating that she sought regular treatment through medication and counseling. AR 22. Here, the ALJ's decision was not impermissibly based on Plaintiff's inability to afford treatment because the ALJ gave several other reasons for finding Plaintiff's subjective complaints not credible.

### 3.    Plaintiff's Daily Activities

In the context of an application for Social Security disability insurance benefits, "the mere fact that a plaintiff has carried on certain daily activities … does not in any way detract from her credibility as to her overall disability. One does not need to be 'utterly incapacitated' in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

**United States District Court**
For the Northern District of California

1    In reaching his final decision, the ALJ noted Plaintiff's acknowledgment that she performed

2   certain daily activities, which were at a level fundamentally inconsistent with allegations of

3   disabling symptoms.  AR 26.  Plaintiff testified that she could not sit for more than five minutes

4   without feeling pain (AR 53), she could not walk more than half a block before feeling pain (AR 54)

5   and she does not drive (AR 59).  Dr. Rosal noted in Plaintiff's functional capacity questionnaire that

6   Plaintiff had limited ability to lift heavy weights.  AR 405.  Yet Plaintiff testified that she washed

7   dishes, cups, and pans, lifted her grandchildren, could hold an infant, and went shopping for food.

8   AR 56-59.  Plaintiff's daily activities were inconsistent with her allegations of disabling symptoms.

9   This was additional substantial evidence to support the ALJ's credibility determination of Plaintiff's

10   reliability regarding her subjective pain complaints.

11    Moreover, the ALJ relied on Plaintiff's poor work history as another reason to find Plaintiff's

12   allegations of disability not credible.  The ALJ noted that Plaintiff's "very inconsistent work history

13   and earnings record even prior to the alleged onset of disability" as an additional factor in reaching

14   his decision to find Plaintiff's subjective complaint testimony not credible.  AR 26; <u>see</u>, <u>e.g.</u>,

15   <u>Thomas v. Barnhart</u>, 278 F.3d at 959 (Plaintiff's "extremely poor work history" and "little

16   propensity to work in her lifetime" negatively affected her credibility regarding her inability to

17   work.  The Court found that Plaintiff's "spotty," at best, work history contributed to the ALJ's

18   inference that "this lack of candor carries over to her description of physical pain").  Plaintiff earned

19   approximately $15,000 in 2002, but otherwise never earned as much as $10,000 in any given year.

20   AR 132.  Here, Plaintiff's inconsistent work history and earnings record, among other factors,

21   allowed the ALJ to infer that Plaintiff's lack of condor negatively affected the credibility of her

22   subjective pain testimony.

23    In reaching his decision, the ALJ also took note of Plaintiff's receipt of only routine and

24   conservative treatment without reasonable or credible explanation despite complaints of disabling

25   symptoms.  AR 24-26.  Defendant argues that Plaintiff's symptom improvement, due to conservative

26   treatments, undermines her allegations of disabling symptoms.  AR 262, 264-265; Defendant's X-

27   MSJ at 10.  Plaintiff, however, argues that a single instance where Plaintiff did well for a short time

28   before her alleged onset date should not constitute substantial evidence to undermine her allegations

1  of disabling symptoms.  Pl's Mot. at 9.  Plaintiff cites no legal authority to support this proposition

2  and the Ninth Circuit has held that conservative treatment of allegedly disabling conditions may

3  undermine a finding of disability.  Johnson v. Shalala, 60 F.3d 1428, 1433 (9th Cir. 1995).  In any

4  event, because Plaintiff's conservative treatment was only one of many factors considered by the

5  ALJ, Plaintiff fails to show that the ALJ's credibility determination was not supported by substantial

6  evidence.

7  **V.      Conclusion**

8          For the reasons set forth above, the Court GRANTS Defendant's motion for summary

9  judgment affirming the Commissioner's decision to deny benefits and DENIES Plaintiff's motion

10  for summary judgment.

11          **IT IS SO ORDERED.**

12

13  Dated: February 9, 2012

14                                                  _____
                                                    ELIZABETH D. LAPORTE
15                                                  United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California